THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRAD L. SMITH and TAMMIE SMITH, husband and wife,<br><br>Plaintiffs,<br><br>v.<br><br>LABORATORY CORPORATION OF AMERICA, INC., a Delaware corporation; PACIFIC NORTHWEST PATHOLOGY ASSOCIATES, a Washington Professional Limited Liability Corporation; and JANE J. YIN, M.D.,<br><br>Defendants. | Case No. C09-1662-JCC<br><br>ORDER |

This matter comes before the Court on Defendant Pacific Northwest Pathology Associates' (PNPA) motion for partial summary judgment (Dkt. No. 89), Defendant Jane Yin's motion for partial summary judgment (Dkt. No. 93), Plaintiffs' joint response (Dkt. No. 103), PNPA's reply (Dkt. No. 105) and Dr. Yin's reply. (Dkt. No. 106.) The Court also considers Defendant Laboratory Corporation of America's (LabCorp) responses to the motions of its co-defendants. (Dkt. Nos. 100 & 101.) Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby DENIES the motions for the reasons explained herein.

ORDER
PAGE - 1

## I. BACKGROUND & PROCEDURAL HISTORY

This case concerns allegations of medical malpractice. In August 2007, Dr. Gerald Young, a physician in Idaho, took a skin biopsy from Plaintiff Brad Smith. The sample was sent to Defendant LabCorp, who sent the specimen to its Seattle, Washington facility where it was prepared as a pathology slide. The slide was then sent to the LabCorp facility in Kent, Washington for review by PNPA.

PNPA's sole place of business is Kent, Washington. Under an agreement with LabCorp, PNPA provided pathology services at LabCorp's Kent facility. LabCorp employees at the facility would receive the slides and give them to PNPA pathologists, who would review them and dictate their findings. Pathology reports would be prepared from the dictated findings and given to LabCorp.

In August 2007, Dr. Yin was serving as a temporary pathologist for PNPA. On August 1, 2007, she reviewed Brad Smith's slide and interpreted it as showing "lichenoid hypertrophic actinic keratosis," a benign skin condition. A later biopsy revealed that Mr. Smith actually had an early, curable stage of malignant melanoma. Plaintiffs allege that Defendants negligence decreased Mr. Smith's chances of survival. At no point was Dr. Yin licensed to practice medicine by the state of Idaho.

Plaintiffs originally filed suit in Idaho state court on two counts. First, Plaintiffs sought a declaration that Defendants had violated the Idaho Medical Practices Act (IMPA), Idaho Code Section 54-1804 *et seq.* by rendering a medical diagnosis for an Idaho resident without holding a license to practice medicine in Idaho. Second, Plaintiffs brought an action for medical negligence under Idaho law. (Idaho Opinion 2 (Dkt. No. 95 at Ex. A).) Dr. Yin removed the action to federal district court in Idaho, and moved to dismiss for lack of personal jurisdiction. (*Id.*) The Idaho district court determined that it did not have jurisdiction and transferred the case to this Court. (*Id.*) Plaintiffs then amended their complaint to include

medical malpractice claims under Washington law, RCW 7.70 *et seq.* in addition to their Idaho claims.

Defendants now seek dismissal of all Idaho claims. In their response, Plaintiffs agree to the dismissal of their negligence claims under Idaho law, but maintain their action for unlicensed practice of medicine under IMPA. Accordingly, this Order addresses Plaintiffs' IMPA claims exclusively.

## II.     APPLICABLE LAW

Federal Rule of Civil Procedure 56(c) mandates that a motion for summary judgment be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). There exists a genuine issue as to a particular fact—and hence that fact "can be resolved only by a finder of fact" at trial— when "[it] may reasonably be resolved in favor of either party"; conversely, there exists no genuine issue when reasonable minds could not differ as to the import of the evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–52 (1986). Whether a particular fact is material, in turn, is determined by the substantive law of the case: "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Summary judgment, then, demands an inquiry into "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law": if applying the relevant law to those facts about which no two reasonable fact-finders could disagree dictates that the moving party must prevail, then a motion for summary judgment must be granted. *Id.* at 250–52.

## III.    DISCUSSION

Essentially, Plaintiffs argue because they were the harmed by a negligent diagnosis performed in Washington by a doctor who was not licensed to treat them in Idaho, they are

ORDER
PAGE - 3

1  entitled to bring claims rooted in Idaho's laws against unlicensed practice and Washington's
2  medical malpractice laws. Defendants argue that Plaintiffs are merely seeking to exploit the
3  fact that Washington malpractice law allows higher non-economic recovery, while IMAP
4  provides for attorney fees. Defendants' position is that Plaintiffs are relying on an artificial
5  distinction between negligence and unlicensed practice and are attempting to stitch together
6  disparate and incompatible state laws into one grotesque. Ultimately, however, the Court
7  concludes that an action drawing on the laws of two states for one transaction is proper and
8  fair. Idaho has an interest in ensuring that its citizens are treated by licensed physicians and
9  Washington has an interest in ensuring that its physicians do not commit malpractice. Dr. Yin's
10 diagnosis of Brad Smith is a coin with two sides.

11       The Court addresses two questions. First, does the Idaho court's finding that it lacked
12 personal jurisdiction over Dr. Yin preclude the application of Idaho law in this Court? If not,
13 should the Idaho claims be dismissed as a matter of law?

14       **A.  Jurisdiction and Choice of Law**

15       As discussed above, the Idaho Court ruled that Idaho cannot assert personal jurisdiction
16 over Dr. Yin. Dr. Yin argues that this ruling precludes Plaintiffs from bringing any claims
17 against her under Idaho law. Plaintiffs respond that Defendants have conflated personal
18 jurisdiction (power of a particular court over a person) with legislative jurisdiction (power of a
19 particular state's laws over a person). Both tests involve a consideration of the contacts that a
20 person has had with a given state. However, courts must apply one standard when determining
21 whether the level of contacts with a state are sufficient to require someone to appear in a court
22 in that state, and a separate standard when determining whether the level of contacts are
23 sufficient to subject somebody to that state's laws, regardless of the state where the lawsuit is
24 conducted.

25       The Supreme Court has indicated that personal jurisdiction and legislative jurisdiction
26 are not coextensive. In *Allstate Ins. Co. v. Hague*, 449 U.S. 302 (U.S. 1981), Justice Stevens

ORDER
PAGE - 4

1  noted in a concurrence: "While it has been suggested that this same minimum-contacts analysis
2  be used to define the constitutional limitations on choice of law, the Court has made it clear
3  over the years that the personal jurisdiction and choice-of-law inquiries are not the same." *Id.*
4  at 320. (internal citations omitted) (citing *Kulko v. California Superior Court*, 436 U.S. 84, 98
5  (1978); *Shaffer v. Heitner*, 433 U.S. 186, 215 (1977); *id.*, at 224–226 (BRENNAN, J.,
6  dissenting in part); *Hanson v. Denckla*, 357 U.S. 235, 253–254 (1958); *id.*, at 258 (Black, J.,
7  dissenting)). Finding that Idaho's lack of personal jurisdiction over Defendants does not
8  preclude Idaho's legislative jurisdiction, the Court now turns to choice-of-law analysis.

9        To determine which state's law applies to a particular issue, Washington courts follow
10 the most significant relationship test articulated in the *Restatement (Second) of Conflict of*
11 *Laws*. Courts must evaluate the location and relative importance of the following contacts: (a)
12 the place where the injury occurred, (b) the place where the conduct causing the injury
13 occurred, (c) the domicile, residence, nationality, place of incorporation and place of business
14 of the parties, and (d) the place where the relationship, if any, between the parties is centered.
15 *Singh v. Edwards Lifesciences Corp.*, 210 P.3d 337, 340 (Wash. Ct. App. 2009).

16       In this case, the contacts are balanced between Washington and Idaho. Washington is
17 the place where the conduct causing the alleged injury occurred, where PNPA conducts
18 business, where LabCorp's facility is located, and where LabCorp passed the sample to Dr.
19 Yin. Idaho is the place where the injury occurred, where Plaintiffs reside, and where the tissue
20 sample was collected and sent to LabCorp. Contacts alone cannot resolve the issue. In such a
21 situation, the Supreme Court of Washington directs this Court to advance one step further and
22 consider "the interests and public policies of potentially concerned states." *Johnson v. Spider*
23 *Staging Corp.*, 555 P.2d 997, 1001 (Wash. 1976).

24       Plaintiffs argue that the Washington legislature has expressed no interest in regulating
25 interstate medical practice, whereas the Idaho legislature has established clear limitations on
26 such practice. The Court agrees. Under Washington law, there are no limits on the practice of

ORDER  
PAGE - 5

an out-of-state physician, provided she does not open an office in Washington. *See* RCW § 18.71.030(6). On the other hand, Idaho has created an aggressive statute to prevent unlicensed out-of-state doctors from practicing on Idaho residents. Idaho Code § 54-1804(1) creates limited allowances for out-of-state physicians: a physician who is not licensed in Idaho may only practice medicine in Idaho if she is called in consultation by an Idaho-licensed doctor; is invited to conduct a lecture, clinic, or demonstration; or is administering a remedy, diagnostic procedure, or advice as directed by a physician. *Id.* at (b), (g). Doctors who do not fall within these exceptions are subject to the criminal penalties in Idaho Code § 54-1804(2), which states:

> Except as provided in subsection (1) of this section, it shall constitute a felony for any person to practice medicine in this state without a license and upon conviction thereof shall be imprisoned in the state prison for a period not to exceed five (5) years, or shall be fined not more than ten thousand dollars ($10,000), or shall be punished by both such fine and imprisonment.

Civil remedies are created in Idaho Code § 54-1804(4), which states in part:

> When a person has been the recipient of services constituting the unlawful practice of medicine, whether or not he knew the rendition of the services was unlawful, proof of the rendition of such unlawful services by the recipient or his personal representative in an action against the provider of such services for damages allegedly caused by the services constitutes prima facie evidence of negligence shifting the burden of proof to such provider of unlawful services.

Idaho has demonstrated that licensure of out-of-state physicians who practice medicine within the state is an important matter of public policy; Washington has not. Accordingly, Idaho law governs the unlicensed practice of medicine issue.

### B. Dismissal of IMAP Claims as a Matter of Law

Having concluded that IMAP is applicable in this case, the Court turns to Defendants' substantive arguments that the IMAP claims should be dismissed. First, Dr. Yin contests any interpretation of Idaho Code § 54-1804 that would cover her work in Washington. The code states that, apart from the exceptions discussed above, it is a felony to practice medicine *in this state* without a license. *Id.* at § 1804(2) (emphasis added). Although the phrase "in this state" does not appear in the civil liability provision contained in § 1804(4), Dr. Yin argues that the

ORDER
PAGE - 6

1  civil liability provision must a) be read in the context of the phrase "in this state" and b)
2  construe that phrase to permit civil liability only for the practice of medicine within Idaho
3  borders. Dr. Yin's argument fails.
4       Since 1995, the College of American Pathologists has taken the position that
5  pathologists who engage in interstate practice should have a license to practice in the state
6  where the patient presents for diagnosis and the specimen is taken. (Luna Decl. 90 (Dkt. No.
7  104 at Ex. 9).) Consistent with this policy, the Idaho Board of Medicine announced in August
8  2006 that pathologists who review tissue samples taken from Idaho patients and who render
9  diagnoses from those samples for inclusion in an Idaho patient's chart are practicing medicine
10 in the state of Idaho, regardless of where they are physically located. (*See* Hammond Decl. Ex.
11 D-13–14 (Dkt. No. 95).) Under this construction, Dr. Yin's conduct falls under § 1804.
12      Although the construction of the Idaho Board of Medicine is not binding, the Idaho
13 Supreme Court has held that an agency interpretation of a statute should be granted deference
14 if four requirements are met: (1) the agency is responsible for administration of the rule in
15 issue; (2) the agency's construction is reasonable; (3) the language of the rule does not
16 expressly treat the matter at issue; and (4) any of the rationales underlying the rule of agency
17 deference are present. *Duncan v. State Bd. of Accountancy*, 232 P.3d 322, 324 (Idaho 2010).
18 The Board's determination is reasonable. First, it is consistent with national standards. Second,
19 it is a permissible reading under the statute. The language "in this state" in one part of the
20 statute does not necessarily mean "within the borders of this state" in another. Accordingly, the
21 Court will defer to the Board's construction.
22      Dr. Yin also argues that she falls into the exemptions of Idaho Code § 54-1804(1)
23 discussed above. Her work, she argues, qualifies as either a consultation or a diagnostic
24 procedure as specifically directed by a physician. However, as Plaintiffs note, Dr. Yin does not
25 allege that she ever made any contact with Dr. Young or any Idaho physician. It is not clear,
26 therefore, in what capacity she consulted with or was specifically directed by an Idaho

ORDER
PAGE - 7

physician as the statute requires. Dr. Yin has failed to show that there is no genuine issue of material fact with respect to Plaintiffs' claims for unlicensed practice of medicine.

    *a. PNPA's Counterarguments*

PNPA argues that Plaintiffs cannot pursue two distinct causes of action for negligence and unlicensed practice of medicine because they have not alleged causation and damages in their Idaho claim that are separate and independent from the Washington claim. Defendants identify no support for their contention that causes of action must identify separate damages. Most, if not all, of the complaints the Court sees allege a single transaction or set of facts and yet plead multiple causes of action.

PNPA also argues that it is exempt from Idaho's laws because it is a company, not a practicing physician. This argument fails for two reasons. First, there is a genuine issue of material fact as to whether or not Dr. Yin was acting as an agent of PNPA. Second, the limitation of Idaho Code §54-1804 to "persons" is found only in the criminal section; the civil liability section refers to actions against "providers." PNPA does not contest their status as a provider.

## IV. CONCLUSION

As both Dr. Yin and PNPA have failed to show no genuine issue of material fact, their motions for partial summary judgment are DENIED.

DATED this 30th day of December, 2010.

                                                      John C. Coughenour
                                                      UNITED STATES DISTRICT JUDGE